o

```
                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE SOUTHERN DISTRICT OF TEXAS
                              LAREDO DIVISION

ABB, INC.,                          §
                                    §
            Plaintiff,              §
VS.                                 §
                                    §    Civil Action No. L-10-83
JOEL PEÑA, et al.,                  §
                                    §
            Defendants.             §
```

MEMORANDUM AND ORDER

Plaintiff ABB, Inc., sues Joel Peña and Juan A. Peña, Jr., d/b/a Energy Production Specialties (collectively, "the Peñas"), to recover the balance of debt the Peñas incurred purchasing goods from ABB. (Dkt. 1, Compl. at ¶¶ 6-8.) ABB brings three Texas law claims: a claim for "suit on account"; for breach of contract, and for "quantum meruit." (Dkt. 1 at ¶¶ 11-16.) ABB also seeks to recover attorneys fees under Tex Civ. Prac. & Rem. Code § 38.001. (Id. at 18.) Pending is ABB's motion for summary judgment. (Dkt. 13.)

JURISDICTION

ABB brought its suit under the Court's jurisdiction to hear cases between parties of diverse citizenship, provided by 28 U.S.C. § 1332. (Dkt. 1 at ¶ 4.) ABB alleges that it is a corporation, formed under Delaware law, with its principal place of business in North Carolina. (Id. at ¶ 1.) The Peñas do not

contest those allegations, and the record contains no indication that they are untrue. The parties agree that the Peñas are residents of Texas, and that "Energy Production Specialties" ("EPS") is their assumed business name. (<u>Id.</u> at ¶ 2–3, 6; Dkt. 6, Answer, at ¶¶ 3, 5.) ABB has provided an assumed name certificate confirming that the Peñas are general partners who do business as "Energy Production Specialties" in Laredo, Texas. (Dkt. 1-1.) ABB's Complaint alleges that the total amount owed by the Peñas, after all offsets, payments, and credits, is $525,232.68. (Dkt. 1 at ¶ 9.)

## BACKGROUND

ABB has not explained the nature of the goods it sells, but the Peñas allege that ABB "is a supplier of goods used in the petroleum industry," and that the Peñas operate "a business in the field service industry." (Dkt. 18, Def. Resp. to MSJ, at ¶ 1.) The parties agree on the following facts regarding their dealings. The Peñas became customers of ABB on January 21, 2003. (Dkt. 1 at ¶ 6; Dkt. 6 at ¶ 5.) ABB sold goods to them on credit. (Dkt. 1 at ¶ 7; Dkt. 6 at ¶ 6.) Their normal practice was for ABB to furnish goods to the Peñas and to send them a monthly statement of the payment due. (Dkt. 1 at ¶ 7; Dkt. 6 at ¶ 6.) They also agree that in June and July of 2009,

the Peñas ordered a large volume of goods, at a price of $372,466.92. (Dkt. 1 at ¶ 8; Dkt. 6 at ¶ 7.)

ABB's motion for summary judgment is supported by a July 15, 2010, affidavit by Gayle Lester, a controller and operations manager at ABB. (Dkt. 13-1 at ¶ 1.) Lester's affidavit was also filed with ABB's Complaint. (Dkt. 1-2.) Lester avers that EPS became an ABB customer on January 21, 2003. (Id. at ¶ 3.) "ABB established a credit limit for the purchase of goods by EPS," and "[i]n the normal course of business, ABB would furnish goods to EPS, with a statement for payment sent by ABB to EPS on a monthly basis." (Id.) Lester relates that the Peñas ordered $372,466.92 worth of goods in June and July, 2009, and she avers that "[i]n addition to these orders, amounts were owed to ABB by EPS for orders previously placed by EPS." (Dkt. 1 at 8.) Lester avers that from July 20, 2009, forward, ABB has made efforts to secure payment from the Peñas, but that they have not paid. (Dkt. 1-2 at ¶ 8.) "Although promises of payment were made by EPS, payments either were not made or were made in the form of checks that did not clear EPS['s] bank account; in one instance, EPS stopped payment on a check . . . ." (Id. at ¶ 4.) Lester avers that "the total amount owed to ABB by EPS is $525,232.68," and that "this amount is after the application of all just and lawful offsets, payments, and credits." (Id. at ¶ 6.) Lester's affidavit is supported by invoices from

3 / 14

ABB detailing goods supplied to EPS in 2009. (Dkt 13-1 at 4-81.)

In their Answer, the Peñas admitted that they owe money on EPS's account with ABB and that some of their checks to ABB did not clear their bank account. (Dkt. 6 at ¶¶ 8, 10.) They denied that they owed the amount stated in Lester's affidavit. (Id. at ¶ 10.) Subsequently, however, the Peñas conceded the amount owed in their responses to ABB's first set of interrogatories. (Dkt. 13-4 at 3.) Asked to identify documents and information supporting their denial that they owe "$525,232.68 relating to goods provided by ABB to [EPS]," the Peñas responded that they "no longer contest the amount alleged by ABB is owed." (Id.) The Peñas gave the same response to ABB's interrogatory asking them to state what amount they do not dispute is owed. (Id.)

## SUMMARY JUDGMENT STANDARD

The Court should render summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The Court

must review the evidence and draw inferences from it in the light most favorable to the nonmoving party. Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co., 336 F.3d 410, 412 (5th Cir. 2003). However, facts "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott, 550 U.S. at 380. "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

## APPLICABLE LAW

### A. Suit on Account

The elements of an action on account are (1) that there was a sale and delivery of merchandise, (2) that the amount of the account is just, that is, that the prices are charged in accordance with an agreement or in the absence of an agreement, they are the usual, customary and reasonable prices for that merchandise; and (3) that the amount is unpaid. Pro Connectors, Inc. v.. Parker Hannifin Corp., 889 S.W.2d 555, 558 (Tex. App.—Houston [14th Dist.] 1994, no writ); Pat Womack, Inc. v. Weslaco Aviation, Inc., 688 S.W.2d 639, 641 (Tex. App.—Corpus Christi

1985, no writ); Jones v. Ben Maines Air Conditioning, Inc., 621 S.W.2d 437, 439 (Tex.Civ.App.—Texarkana 1981, no writ).

Rule 185, Texas Rules of Civil Procedure, provides a special provision allowing a plaintiff to establish a prima facie claim for a suit on account with an affidavit meeting certain requirements, as well as special procedures that a defendant faced with such an affidavit must follow to preserve his right to contest the amount owed. ABB invokes the provisions of Rule 185 in its motion for summary judgment (Dkt. 13 at ¶ 14), and much of the Peñas' response is devoted to arguing that ABB cannot take advantage of Texas Rule 185 because Lester's affidavit does not strictly comply with its requirements. (Dkt. 18 at ¶¶ 3-9.)

Texas Rule 185 does not apply in this proceeding, and the sufficiency of Lester's affidavit under that Rule is a moot issue. The procedures of an action heard in this Court are controlled by federal law. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Texas's procedural law applies only to the extent that it is incorporated by reference in the body of federal law governing this Court's proceedings. E.g. Rule 64, Fed. R. Civ. P.

ABB cites an unpublished disposition of a case in this District in which it was assumed, without explanation, that a plaintiff could avail itself of Texas Rule 185. Scholl Forest

Industries, Inc. v. Steve Ring Contractors, L.L.C., Civ. No. H-06-1237, 2007 WL 1520995 at **1-2 (S.D. Tex., May 22, 2007) (Ellison, J.). Judges in other federal districts in Texas have held that Rule 185 does not apply in federal court. Sneed Shipbuilding, Inc. v. Spanier Marine Corp., 125 F.R.D. 438, 443-44 (E.D. Tex. 1989); Steves & Sons, Inc. v. Trinity Glass Intern., Inc., SA-06-CV-357-XR, 2007 WL 1556743 at *3 (W.D. Tex., May 25, 2007) (unpublished); Steelplan, Ltd. v. Steel Plan Australia Pty. Ltd., No. 3:02-CV-0470-P, 2003 WL 21499303 at *9 (N.D. Tex., June 25, 2003) (unpublished). Texas state courts' characterizations of Rule 185 do not control this Court's determination of whether Rule 185 is procedural or substantive for Erie purposes, but it is instructive that the Texas Supreme Court has explained that "Rule 185 is not a rule of substantive law but is a rule of procedure with regard to evidence necessary to establish a prima facie right of recovery." Rizk v. Financial Guardian Insurance Agency, Inc., 584 S.W.2d 860, 862 (Tex. 1979).

The Court concludes that Texas Rule 185 is procedural for Erie purposes. Accordingly, to prevail on summary judgment, ABB must establish the elements of its claim on account according to the standard provided by Rule 56, Fed. R. Civ. P.

B. Breach of Contract

The elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach.

C. Quantum Meruit

A claim for "quantum meruit," termed "quantum valebant" when goods are involved, arises when a party refuses to pay another for valuable goods or services provided under circumstances giving reasonable notice that the provider expected to be paid.[1] Quantum meruit/valebant is an equitable theory of recovery intended to prevent unjust enrichment when there is an implied agreement to pay for what was provided. Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc., 787 S.W.2d 942, 944 (Tex. 1990). Recovery under an equitable theory of this kind is generally precluded when a valid contract addresses the parties' obligations on a particular matter. Fortune Prod. Co. v. Conoco, Inc., 52 S.W.3d 671, 684 (Tex. 2000).

---

[1] See Excess Underwriters at Lloyd's v. Frank's Casing Crew & Rental Tools 246 S.W.3d 42, 49 (Tex. 2008); Heldenfels Bros., Inc. v. City of Corpus Christi, 832 S.W.2d 39, 41 (Tex. 1992); Knebel v. Capital Nat'l Bank, 505 S.W.2d 628, 631 (Tex. Civ. App.—Austin 1974, Pet. granted), rev'd on other grounds, 518 S.W.2d 795 (Tex. 1974); see also Bank One, Texas, N.A. v. F.D.I.C., 16 F. Supp. 2d 698, 714 n.19 (N.D. Tex. 1998).

DISCUSSION

A. ABB's Claim on Account and Breach of Contract Claim

As already noted, the Peñas have admitted that EPS was a customer of ABB, that ABB regularly furnished them with goods for which payment was due on a monthly basis, and that they presently owe money on their account with ABB. (Dkt. 6 at ¶¶ 5-6; Dkt. 1 at ¶¶ 6-7.) Any dispute over the balance is foreclosed by the Peñas' concession in their interrogatory responses that they owe the amount ABB alleges in its Complaint. (Dkt. 13-4 at 3.) The Peñas do not indicate a desire to retract that concession in their response to ABB's motion for summary judgment. (Dkt. 18) Nor do they make any effort to show that they should be permitted to do so. They nevertheless argue that while "ABB may be entitled to a partial summary judgment on its breach of contract cause of action on the issue of breach . . . [ABB] has failed to establish its damages as a matter of law." (Dkt. 18 at ¶ 10.) The Peñas support this contention by observing that the total due according to the invoices attached to Lester's affidavit, $525,248.54, is $15.86 greater than the total stated in ABB's Complaint, $525,232.68. (Id.) The Peñas contend that this discrepancy constitutes "a variance between the complaint and the proof offered in support of [ABB]'s breach of contract damages and in effect makes [ABB]'s damages unliquidated and subject to resolution by the trier of fact."

(Id.)  ABB seeks judgment for only $525,232.68 (Dkt. 13 at pp. 9-10; Dkt. 1 at p.4), which is an amount smaller than its evidence supports.  Moreover, the Peñas have conceded that they owe ABB $525,232.68 for goods purchased on credit, making resort to evidentiary proof unnecessary.

The summary judgment record establishes that there is no genuine dispute that the Peñas have failed to pay ABB $525,232.68 for goods that ABB sold and provided to them on credit.  Accordingly, the Court will render summary judgment for ABB on its claim on account and its breach of contract claim.  For that reason it is not necessary for the Court to consider ABB's motion for summary judgment on its quantum valebant claim.  See Fortune Prod. Co., 52 S.W.3d at 684 (When a valid contract addresses the parties' obligations on a particular matter, recovery under an equitable theory is generally precluded).

B. Attorney Fees

Rule 54(d)(2), Fed. R. Civ. P., and Local Rule 54.2 control when a party may move this Court for attorney's fees under Texas Civil Practice and Remedies Code § 38.001.  See Pierce v. Barnhart, 440 F.3d 657, 663 (5th Cir. 2006) (Rule 54 and the district court's local rules govern the timing of a party's motion for attorney's fees if the statute entitling the party to fees does not provide an explicit time limit).  Rule 54(d)(2)

states that a motion for attorney's fees must be "(i) filed no later than 14 days after the entry of judgment; [and] (ii) specify the judgment . . . entitling the movant to the award . . . . ." Local Rule 54.2 states that "[w]hen attorney's fees are taxable as costs, an application for them must be made with the application for other costs." A prejudgment motion for fees is premature under both rules. Cf. Pierce, 440 F.3d at 660 (before judgment, a motion for fees under 28 U.S.C. § 2412(d), stating that a party "shall" move for fees within 30 days of judgment, is premature).

### C. Judgment Interest

State law governs the award of prejudgment interest in diversity cases. Meaux Surface Protection, Inc. v. Fogleman, 607 F.3d 161, 172 (5th Cir. 2010) (citing Harris v. Mickel, 15 F.3d 428, 429 (5th Cir. 1994)). A Texas statute provides for prejudgment interest for judgments in contract, wrongful death, personal injury, property damage, and condemnation cases. Tex. Fin. Code §§ 304.002, 304.102, 304.201. In cases not covered by statute, Texas law allows for an award of equitable prejudgment interest. Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 531 (Tex. 1998); Cavnar v. Quality Control Parking, Inc., 696 S.W.2d 549, 552 (Tex. 1985); Meaux, 607 F.3d at 172. If ABB's agreement with EPS specified a rate at which

interest would accrue in the event payment was past due, Texas law entitles ABB to prejudgment interest at that rate. <u>Preston Farm & Ranch Supply, Inc. v. Bio-Zyme Enters.</u>, 625 S.W.2d 295, 298 (Tex. 1981); <u>Adams v. H & H Meat Products, Inc.</u>, 41 S.W.3d 762, 780 (Tex. App.—Corpus Christi, 2001, no pet.). Otherwise, prejudgment interest accrues at the post-judgment rate for judgments issued by Texas courts, set by the consumer credit commissioner. Tex. Fin. Code §§ 304.003, 304.103, 304.201. <u>Kenneco</u>, 962 S.W.2d at 532. Prejudgment interest begins to accrue on the earlier of (1) 180 days after the date a defendant receives written notice of a claim or (2) the date suit is filed. Tex. Fin. Code §§ 304.104; <u>Brainard v. Trinity Universal Ins. Co.</u>, 216 S.W.3d 809, 815-16 (Tex. 2006); <u>Kenneco</u>, 962 S.W.2d at 531. Prejudgment interest accrues until the day preceding the date judgment is rendered. Tex. Fin. Code. § 304.104; <u>Brainard</u>, 216 S.W.3d at 815-16. Prejudgment interest is computed as simple interest. Tex. Fin. Code. § 304.104.

The record contains no indication of whether the parties agreed to a contract interest rate. The Judgment will therefore include prejudgment interest at the rate set by the consumer credit commissioner, presently 5%.[2] There is no indication that ABB provided the Peñas with a written notice of its claims prior

---

[2] http://www.occc.state.tx.us/pages/int_rates/Index.html.

to filing suit. Accordingly, the Court will calculate prejudgment interest from the day ABB filed, July 16, 2010. Simple interest at 5% on $525,232.68 since July 16, 2010, comes to $17,411.82.

Post-judgment interest on this Court's judgments is fixed at the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment. 28 U.S.C. § 1961(a). That rate is currently 0.25%. Post-judgment interest shall be computed daily to the date of payment, and shall compound annually. 28 U.S.C. § 1961(b).

## CONCLUSION

ABB's motion for summary judgment (Dkt. 13) is GRANTED with respect to ABB's claim on account and breach of contract claim. Regarding ABB's quantum valebant claim, the motion is DENIED. On the matter of attorney fees, the motion is DENIED without prejudice to ABB's filing a post-judgment motion according to Rule 54, Fed. R. Civ. P., and Local Rule 54.2. The motion for attorney fees must be supported by documentation of sufficient detail for the Court assess the reasonableness of the amount of time spent and fees charged for the particular tasks performed by the prevailing party's counsel. The attorney affidavits submitted with ABB's motion for summary judgment (Dkt. Nos. 13-

2, 13-3) do not provide the requisite level of detail. The necessary documentation typically takes the form of itemized billing records, although any competent and sufficiently specific evidence will serve.

DONE at Laredo, TX, this 15th day of March, 2011.

_____
George P. Kazen
Senior United States District Judge